**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tricia Ma,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-23-02278-PHX-KML<br><br>**ORDER** |

Plaintiff Tricia Ma seeks review of the Social Security Commissioner's decision denying her disability insurance benefits. Because the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is not based on harmful legal error, it is affirmed.

**I.   Background**

Ma filed an application for disability insurance benefits on February 14, 2020, alleging a disability beginning April 3, 2019. (Administrative Record ("AR") 190.) An ALJ denied her claim and Ma eventually sought review of the denial in this court. (AR 1, 39–54, 770–71.) The Commissioner and Ma stipulated to a remand, and the court granted that motion. (AR 775.) A different ALJ then denied Ma's claim. (AR 717–807.) That denial is at issue in this case.

**II.   Legal Standard**

The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on harmful legal error. *Orn v. Astrue*, 495

F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" of evidence and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

**III.   Discussion**

Ma argues the ALJ committed three materially-harmful legal errors in analyzing her claim: (1) she did not provide clear and convincing reasons for discrediting Ma's symptom testimony; (2) she did not resolve a conflict between the job numbers the vocational expert ("VE") provided and those Ma's attorney provided; and (3) she did not adequately resolve a conflict between Ma's assigned residual functional capacity ("RFC") and one occupation, silver wrapper, the VE said Ma could perform.

**A. The ALJ's Five-Step Disability Evaluation Process**

A claimant is disabled under the Social Security Act if she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months or more. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Whether a claimant is disabled is determined by a five-step sequential process. *See Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022).

At step four, the claimant must show her RFC—the most she can do with her impairments—precludes her from performing her past work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found that Ma met this burden. (AR 733–34.) At step five, the Commissioner must determine if the claimant is able to perform work that "exists in significant numbers in the national economy" given the claimant's RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* Only step four and five are at issue in this case.

At step four the ALJ determined Ma had the RFC to perform "light work." (AR 725 (citing 20 C.F.R. § 404.1567(b).) The ALJ did so in part by noting a discrepancy between Ma's symptom testimony and the objective medical and other record evidence. (AR 727–32.) But the ALJ also imposed additional limitations on Ma's RFC (AR 725–33) based on her finding that Ma had the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine with a herniated nucleus pulposus, right carpal tunnel syndrome, hypertension, nonrheumatic mitral valve regurgitation, premature ventricular contractions, and palpitations. (AR 723.) Based on Ma's assigned RFC, the ALJ found at step five that there are jobs that exist in significant numbers in the national economy which Ma could perform. (AR 734–35.)

### B. The ALJ's Evaluation of Ma's Symptom Testimony

Ma argues the ALJ erred by discounting her subjective complaints about the severity of her impairments. (*See* Docs. 10 at 7–18, 13 at 1–2.) When a claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to cause the severity of the symptoms alleged and there is no evidence of malingering, an ALJ may only reject subjective testimony about the severity of the claimant's symptoms by offering "specific, clear and convincing reasons for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). Such findings are sufficiently specific when they permit a reviewing court to conclude that the ALJ "did not arbitrarily discredit [a] claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (simplified) (superseded by statute on other grounds).

Ma testified about her symptoms at the administrative hearing. (AR 749–57.) The ALJ determined Ma's impairments "could reasonably be expected to cause the alleged symptoms" but her "statements concerning the intensity, persistence and limiting effects of these symptoms" were not "entirely consistent" with the evidence in the record. (AR 727, 730.) The ALJ concluded Ma's symptom testimony was inconsistent with her reports of symptom relief from conservative treatment, the objective medical records, and her daily

activities. (Doc. 10 at 7–18 (citing AR 727, 729).) Ma argues these reasons were insufficient.

As the Commissioner points out, the effectiveness of conservative treatment is a relevant factor an ALJ may consider when evaluating the reliability of symptom testimony. (Doc. 12 at 7 (citing 20 C.F.R. § 404.1529(c)(3)(iv)–(vi)).) *See also Tommasetti*, 533 F.3d at 1040 (noting that a favorable response to conservative treatment "undermines [a claimant's] reports regarding the disabling nature of [her] pain."). Objective medical evidence can also be used to "undercut[ ]" a claimant's subjective symptom testimony when it "is *inconsistent* with [that testimony]." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022).

Most of Ma's arguments contending that the ALJ improperly discounted her symptom testimony stem from Ma's citation to evidence in the record that purportedly supports a disability finding. (*See* Doc. 10 at 7–18.) For example, Ma claims she "consistently reported ongoing pain as the most limiting factor to her condition with an increase in such symptoms with use." (Doc. 10 at 9 (citing AR 749).) Ma also claims the ALJ "glossed over" her "strength, sensory, and reflex deficits" but she does not cite any evidence in the record to support this position. (Doc. 10 at 9–10.) Ma does cite medical records supporting the "clinical observations" that she has restricted range of motion in her right shoulder, muscle spasms, and decreased reflexes in her right triceps (Doc. 10 at 10), but the ALJ credited these symptoms and only discounted their severity. (*See* AR 727, 729.) Most importantly, if "the evidence [in the record] is susceptible to more than one rational interpretation" as it is here, the court "will uphold the ALJ's conclusion." *Tommasetti*, 533 F.3d at 1039.

Examining the ALJ's decision, the ALJ noted Ma "reported feeling better with physical therapy and massage therapy." (AR 727 (citing AR 438) (a spine and musculoskeletal specialist noted Ma "is feeling better[,]" her "neck muscles did not feel as tight as last time[,]" and one of her neck muscles "was much better.").) The ALJ also cited medical records noting that Ma "had done fairly well with significant physical therapy and

medications" and "handles her pain generally quite well at home." (AR 728 (quoting AR 1259), AR 729 (citing AR 1230).) The ALJ acknowledged "[p]ositive findings" consistent with some of Ma's testimony but pointed out how "[i]n contrast to her testimony of being in extreme pain and unable to walk, stand or sit, physical examinations generally show normal strength in her bilateral lower extremities, normal gait, and no distress." (AR 729 (citing AR 1191, 1222, 1259, 1303–04, 1512, 1520).) The ALJ cited ample objective medical records, so Ma is wrong to suggest her symptom testimony was discounted on an improper basis.

Ma argues the ALJ's reasoning regarding her conservative treatment is "not sound because [her] treating specialist did suggest surgical consultation with a possible fusion of [part of her spine] on more than one occasion, but she declined to proceed." (Doc. 10 at 8.) This argument is misguided, however, because it does not address the ALJ's findings that Ma's symptoms were treated conservatively and effectively. In other words, Ma's decision not to pursue more aggressive treatment does not establish conservative treatment was entirely ineffective. If anything, Ma declining the surgery while her symptoms improved through conservative treatment shows conservative treatment was effective. (*See* AR 731 (citing AR 362–63) ("She and her husband do not wish to have her undergo surgery since she is stable at least not worse.").) *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (noting a claimant's lack of motivation to seek treatment such as surgery "is powerful evidence" regarding the severity of their pain.).

Ma acknowledged at her hearing that she did not want to have surgery because of the "risk versus benefits, it's just too scary" so "it's not something I am thinking about right now." (AR 750.) And the ALJ acknowledged it was reasonable for Ma to decline to go forward with the surgery. (*See* AR 731 ("cervical surgery . . . [has] been recommended but [was] declined due to the claimant's reasonable concerns regarding complications of surgery and exposure to others during the Coronavirus pandemic.").) But the ALJ explained that despite the suggestion of surgery, "the evidence indicates response to treatment and improvement in her symptoms with routine and conservative treatment, with

no reports of negative side effects [or] complications related to those treatments." (AR 731–32.) Thus, the ALJ's decision to discount Ma's symptom testimony based on its inconsistency with her symptom relief from conservative treatment is supported by substantial evidence. The court finds no error in the ALJ's reasoning.

The ALJ also determined that Ma's testimony regarding her symptoms was partially inconsistent with "her ongoing high level of regular activities, [so] a more restrictive functional assessment is not supported." (AR 731.) When summarizing her findings, the ALJ said the record supported "significant physical limitations but is not consistent with the level of limitation" Ma alleged. (AR 732.) Ma argues that "the ALJ's characterization of [her] activities as 'high level' and 'regular' is neither supported by her own summary of evidence, nor the facts." (Doc. 10 at 14 (citing AR 731).) She points to various pieces of evidence that purportedly contradict the ALJ's analysis of her symptom testimony and her daily activities. (Doc. 10 at 14–17.) Ma also argues that the ALJ failed "to explain how [her]" activities of daily living "are consistent with her ability to sustain fulltime, competitive employment."[1] (Doc. 10 at 17.) But the ALJ determined a transferability analysis was not merited because it "is not material [to her] determination of disability[.]" (AR 734.) Even if it was error for the ALJ to decline to conduct a transferability analysis and thus improper to use daily activities to discount Ma's testimony, that error would be harmless because, as the ALJ stated, it was inconsequential to her nondisability determination. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (simplified) (an ALJ's errors are harmless if they are "inconsequential to the ultimate nondisability determination.").

Ma argues the ALJ's reliance on her daily activities was "neither a clear nor convincing reason" to discount her symptom testimony, so it was legal error to rely on them. (Doc. 10 at 16.) Ma testified she can only sit upright for 20 to 25 minutes before

---

[1] The court assumes Ma is attempting to make an argument that the ALJ failed to conduct a "transferability" analysis as she is required to do. *See Orn*, 495 F.3d at 639 (citation omitted) ("An ALJ must find a claimant is able to spend a 'substantial part' of their day 'engaged in pursuits involving the performance of physical functions that are transferable to a work setting' to use daily activities as grounds for an adverse credibility finding.").

- 6 -

feeling symptoms, that her symptoms flare whenever she moves her right arm or fingers, and that she takes naps pretty much every day especially after physical activities. (AR 752, 753, 757.) The ALJ pointed to Ma's ability to occasionally do laundry, drive short distances, attend regular treatment appointments, engage in a home exercise program, travel, and walk for exercise as inconsistent with the level of severity Ma alleged. (AR 731.) Given the severity of symptoms Ma testified to, the ALJ reasonably relied on those daily activities as undercutting her testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (superseded by statute on other grounds) ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

In addition, the ALJ still imposed "significant physical limitations" based on Ma's testimony including a "limitation to 4 hours of standing and walking despite her reported activities including walking and hiking." (AR 732–33.) Ma's purported counter evidence mainly attacks the ALJ's finding that she could stand or walk for four hours. But the VE testified that two jobs Ma could perform, "silver wrapper and order caller[,]" could "be done either sitting or standing, or in a combination of the two . . ." (AR 760.) So even if Ma could not stand for four hours, it would be irrelevant to the ALJ's nondisability determination as discussed in more detail below.

### C. The ALJ's Step Five Job Numbers and Occupations Findings

Based on the RFC the ALJ ascribed to Ma, the ALJ determined she could be a silver wrapper, an order caller, or a photocopy machine operator. (AR 734.) The VE testified at Ma's administrative hearing that nationally there are 14,700 silver wrapper jobs, 11,000 order caller jobs, and 32,900 photocopy machine operator jobs. (AR 760.) The ALJ adopted these numbers in her decision and held at step five that they constituted a significant number of jobs in the national economy, so Ma was not disabled. (AR 734–35.)

Ma believes the ALJ erred by including silver wrapper as a potential occupation someone with her RFC could perform and erred by relying on the VE's job numbers. (Doc. 10 at 18–22.) Ma argues once the VE's alleged errors are addressed, the remaining number

of jobs she could perform would not constitute a "significant number" and the ALJ would have to find her disabled. (Doc. 10 at 22.)

But if the silver wrapper job is removed from the VE's calculation, the remaining number of jobs Ma could perform remains significant at 43,900. *See Gutierrez v. Commissioner of Social Sec.*, 740 F.3d 519, 525 (9th Cir. 2014) (affirming an ALJ's decision that 25,000 jobs nationally constituted a significant number). So even if the ALJ erred by including silver wrapper as a potential occupation, that error was harmless. *See Marsh*, 792 at 1173 (simplified) (an ALJ's errors are harmless if they are "inconsequential to the ultimate nondisability determination.")

As for whether the ALJ's reliance on the job numbers provided by the VE was error, it was not. Ma's attorney contested them at the administrative hearing because she was confused how the VE found 58,700 jobs Ma could perform in the national economy when she found "about half" as many jobs on the same software the VE used. (AR 762.) The discrepancy went unresolved at the hearing, but the ALJ allowed Ma's attorney to reserve the issue for a post-hearing objection. (AR 764.) In her objection, she produced a job numbers report which showed 7,423 jobs nationally for a silver wrapper, 11,050 for an order caller, and 6,169 for a photocopy machine operator for a total of 24,642 jobs. (AR 995–1005.) But this remains a significant number of jobs, so even if the ALJ adopted them it would still have supported her nondisability finding. *See Gutierrez*, 740 F.3d at 525.

Additionally, when a claimant presents "competing job numbers that conflict with those provided by a vocational expert" the "ALJ need only explain his rejection" of the claimant's numbers. *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1189–90 (9th Cir. 2022). The ALJ did so here. Although she "considered" Ma's objection to the job numbers, she found it "not persuasive" because Ma's attorney "conceded at the hearing" that "her input" on the job number software "may have been different from" the VE's.[2] (AR 735.) And, the ALJ added, the competing job numbers still "represent[ed] a significant number of jobs[,]" so they would not have changed her nondisability determination. (AR 735.) The ALJ

---

[2] The court assumes the ALJ is referring to when Ma's attorney said she was "not sure if" her and the VE were "just pulling the [job number] reports differently." (AR 762.)

explained why she rejected the numbers produced by Ma's attorney and even stated that her conclusion would not change if she accepted the competing job numbers, so it was not legal error for her to rely on them.

### IV.     Conclusion

The ALJ's partial discounting of Ma's symptom testimony was supported by substantial evidence and not based on harmful legal error. The ALJ also did not commit harmful legal error by relying on the VE's job numbers and listing of possible occupations Ma could perform. And even if she erred by including silver wrapper as a potential job, that error would be harmless because it would not have affected the ALJ's nondisability determination. As a result, the ALJ's decision that Ma is not disabled is affirmed.

**IT IS ORDERED** affirming the August 29, 2023, decision of the ALJ.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 13th day of November, 2024.

Honorable Krissa M. Lanham
United States District Judge